[Crim. No. 15220. Second Dist., Div. One. Dec. 23, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JIMMY DEAN SARTAIN, Defendant and Appellant.

Josef Dubiel, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Ronald M. George, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of assault with a deadly weapon with intent to commit murder. (Pen. Code, § 217.)

In an information filed in Los Angeles on May 26, 1967, defendant was charged in count I with committing an assault with a deadly weapon upon Donald Johnson, on May 2, 1967, with the intent to murder the said Donald Johnson. It was further charged that at the time of the arrest of defendant for the above-stated offense he was armed with a concealed weapon, namely, a .38 caliber revolver. In count II defendant was charged with a violation of the provisions of Penal Code section 245, subdivision (b) in that he did on May 2, 1967, commit an assault with a deadly weapon upon Donald Johnson, a peace officer of the Los Angeles Police Department, when

Johnson was engaged in the performance of his duties, the said defendant then and there knowing or reasonably expected to know that Johnson was a peace officer engaged in the performance of his duties. Further, that at the time of the arrest of defendant for the stated offense defendant was armed with a concealed deadly weapon, a .38 caliber revolver. Defendant was represented at the time of trial by private counsel of his own choice. Defendant pleaded not guilty. By stipulation of counsel and all concerned the cause was submitted upon the testimony contained in the transcript of the proceedings had at the preliminary hearing; each side reserved the right to offer additional evidence and all exhibits received at the preliminary hearing were deemed received into evidence. Both sides rested without additional testimony. The court found defendant guilty as charged in count I and not guilty as charged in count II. No disposition was made on the issue as to whether defendant was armed. Defendant was sentenced on September 1, 1967, to the state prison, the term to run consecutively to any time or term "owed or serving." By order of court the defendant was permitted to file a late notice of appeal on March 29, 1968.

A résumé of some of the facts is as follows: shortly after noontime on May 2, 1967, Officer Johnson of the narcotics division of the Los Angeles Police Department was in the area of 710 4th Avenue, Venice. The officers were investigating the general area because of their belief that the major supply of heroin for the bay area was within that immediate area. There were several distributors of heroin in the area but in particular the police were watching the address of 710 4th Avenue where a man named Monson according to their information was involved in the sale of heroin. The officers saw defendant walk out of the driveway where Monson resided. Defendant had his right hand in his jacket pocket and the pocket appeared to have a bulge in it. The officers were not in uniform and were in an unmarked police car. Johnson stepped out of the police car and said to defendant, "Police officer. I would like to talk to you." The officer received no response and defendant continued walking southbound. Johnson continued walking behind defendant and again said, "Police officer. I would like to talk to you." Defendant then turned around, looked at the officer and "immediately broke and ran."

The officer chased defendant and they ran through vacant lots, bushes, trees and back yards. The officer called to defendant several different times, "police officer" and directed

that defendant "halt." Defendant jumped over a 4-foot-high chain link fence. As Officer Johnson climbed the fence defendant was about 8 feet away and at that time defendant whirled and "took one shot" at the officer. The shot missed and the officer fell down to the ground, pulled out his gun and contined the chase. The defendant ran about 40 to 50 feet, then with gun in hand he turned around, looked at the officer and pointed the gun at him whereupon the officer fired a shot at defendant. The shot fired by Johnson missed and defendant continued to run. One of the other officers fired a shot at defendant and also missed him. Defendant was seen to go between two apartment houses in a trash area. Upon the approach of Johnson defendant threw his gun to the sidewalk and said "Don't shoot." Defendant was ordered to come out with his hands up and he did so. He was arrested. Defendant's gun, a .38 caliber special revolver, was picked up by the officer. The gun contained five rounds of live ammunition and one empty cartridge case at that time. It was admitted into evidence without objection. Defendant was fully advised of his then constitutional rights. No evidence was offered in behalf of defendant.

 Appellant now contends that the prosecution did not prove that he had the intent to kill and consequently the evidence does not support the judgment; that the officer did not have sufficient cause to stop him and that his right to confront and cross-examine the witnesses against him could only be waived by him personally, and that the waiver by counsel was ineffective. There is no merit to appellant's assertions.

 True it is that assault with a deadly weapon with intent to commit murder requires a specific intent to kill (Pen. Code, § 217; *People* v. *Mize,* 80 Cal. 41, 44 [22 P.80]; *People* v. *Pineda,* 41 Cal.App.2d 100, 104 [106 P.2d 25]; *People* v. *Alexander,* 41 Cal.App.2d 275, 281 [106 P.2d 450, 916]), however, the "murder" which a defendant must intend need not show premeditation. (See *People* v. *Bernard,* 28 Cal.2d 207, 214 [169 P.2d 636]; *People* v. *Hoxie,* 252 Cal.App.2d 901 [61 Cal. Rptr. 37].) The question of the intent with which an act was done is a question of fact. (See *People* v. *Klor,* 32 Cal.2d 658, 661 [197 P.2d 705]; *People* v. *Becerra* 223 Cal.App.2d 448, 450 [35 Cal.Rptr. 808].) Here the appellant for all intents and purposes fired his revolver point blank at the officer. There was no self-defense involved by any stretch of the imagination. We view the matter as an appellate court (see *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778]) and

consider the evidence in favor of the prosecution under the circumstances.

■ An officer of the law has a right to question a person who is engaged in a suspicious situation although there may not be probable cause to arrest the person. (See *Terry* v. *Ohio,* 392 U.S. 1, 22 [20 L.Ed.2d 889, 906, 88 S.Ct. 1868] ; *People* v. *Mickelson,* 59 Cal.2d 448, 454 [30 Cal.Rptr 18, 380 P.2d 658] ; *People* v. *Curtis* *(Cal.App.) 70 Cal.Rptr. 271.) Particularly is this true when the suspect attempts to run away or to evade the officer, in other words, a ''defendant's evasive and irregular tactics may give the police reasonable grounds to pursue and halt him for investigative purposes.'' (*People* v. *Leos,* 265 Cal.App.2d 822, 824 [71 Cal.Rptr. 614].)

■ The appellant finally asserts in effect that the stipulation of his own private counsel in his presence and not over his objection is ineffective. When a defendant has counsel, it is counsel's decision on a question such as here involved that must control. Counsel is the manager of the law suit; this is the essence of the adversary system. By the nature of things counsel is skilled and trained by education and experience to perform the services at hand and the defendant is not. That is why counsel is there. (See *Rhay* v. *Browder,* 342 F.2d 345.)

In this cause at bench for example counsel undoubtedly knew from his client that he was an ex-convict and a parole violator at the time in question. Counsel knew that for some strange reason not apparent from the record the prosecutor had not charged the appellant in the information with any prior convictions and that had he been so charged and found guilty under the circumstances he would have been sentenced to a term of 5 years to life, a term far in excess of what was ordered. Appellant in this appeal has made the probation officer's report a part of the record in this case. Therein appellant stated pointedly that after his last release from the state prison he had worked only a very brief time, ''However, he has always had plenty of money and there will be plenty more where that came from. As to the source of this income the defendant frankly stated it came from bank robberies.'' and that ''He has a sizeable amount of savings in more than one bank but he would not divulge the amounts.'' Defendant also stated that he is a narcotics addict, that he started with marijuana when he was 13 years of age and at

---

*A hearing was granted by the Supreme Court on September 11, 1968. The opinion of that court is reported in 70 Cal.2d.347 [74 Cal.Rptr. 713, 450 P.2d 33].

16 years began using heroin and has used it since that time to the present. He has at least two prior felony convictions. The report continues: "Later at the station he added, 'As I came out of the driveway I knew who was there. I panicked and started running. I was holding an outfit and I threw it somewheres in the alley after I jumped over the fence. I am a parole violator and have been running for approximately six or eight months.'

"At the time of the arrest defendant had an additional ten rounds of live ammunition in his pocket.

"Later, in retracing subject's movements during the pursuit, officers found a hypodermic kit."

Under the title *"Interested Parties"* the report states: "Parole Officer Penpineau of Adult Corrections stated that defendant failed to report for nalline testing immediately upon his release from state priosn. He had therefore been in violation of parole for almost a year and a half at the time of his arrest for the present offense. The defendant is also wanted by the federal authorities as a suspect in several bank robberies that occurred during the past year. They believe they can definitely charge him with four such offenses and there are six additional suspected bank robberies. It seems that defendant's brother had master-minded these crimes while in prison. Defendant was involved with a group in other bank robberies."

Under the circumstances counsel was most canny in stipulating that the matter be submitted on the testimony taken at the preliminary examination. Appellant, who according to his own record, was very well acquainted with criminal court proceedings stood silent, and made no objection when his counsel agreed to the submission. Under the circumstances there was no failure of due process and there was no denial of fundamental fairness to appellant. (See *People* v. *Foster,* 67 Cal.2d 604, 606 [63 Cal.Rptr. 288, 432 P.2d 976]; *People* v. *Stewart,* 250 Cal.App.2d. 829, 835-836 [59 Cal.Rptr. 71]; *People* v. *Cruz,* 244 Cal.App.2d 137, 140 [53 Cal.Rptr. 354].)

It is noted that appellant himself did not state to the probation officer that he was just an ordinary citizen walking down the street behaving himself and that there was no reason to talk with him or later to arrest him. He did not state that he ran because he thought the men were robbers (such as himself), to the contrary he said that he ran because he had a narcotics outfit with him, that he was a parole violator, that he knew the men were officers and in effect because he did not want to go back to prison.

Appellant's present counsel, appointed by this court upon the sworn statement of appellant that he is an indigent, has unfortunately misstated some of the important facts and cited as authority that which has been overruled by subsequent decisions. We do not commend such practice.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.