[Crim. No. 6768. Third Dist. Feb. 7, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
WILBERT LEE HAYDEN, Defendant and Appellant.

**COUNSEL**

Robert L. Bouchier, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Charles P. Just and W. Scott Thorpe, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FRIEDMAN, Acting P. J.**—As a result of the holdup of a market defendant was found guilty of three counts of armed robbery. The jury returned

special verdicts finding that at the time of the offenses defendant was "armed with a dangerous and deadly weapon, to wit, a pistol" (impliedly evoking Pen. Code, § 3024) and finding also that he used a firearm in violation of Penal Code section 12022.5. The abstract of judgment makes findings which subject defendant to the penalties of sections 3024 and 12022.5. Defendant appeals.

Holdup victims identified defendant as one of two robbers. They testified that defendant had threatened them with a revolver and had pointed the weapon at them. Officers gave chase and caught defendant about 10 blocks from the scene. The revolver was not found.

■ Defendant attacks a prospective ruling of the trial court which would have exposed him to impeachment by evidence of a prior armed robbery conviction had he chosen to take the stand. In view of the ruling he elected silence. He charges abuse of the standards of discretion outlined in *People v. Beagle*, 6 Cal.3d 441, 452-453 [99 Cal.Rptr. 313, 492 P.2d 1]. As *Beagle* points out (quoting from a federal case), convictions for the same crime as that charged should be admitted "sparingly" for the purpose of impeachment. In terms of its assaultive character, a prior conviction of armed robbery has little bearing on testimonial veracity; in terms of its larcenous character, it does. Thus, notwithstanding the direction for sparing use, there was a rational basis for the trial court's ruling and no abuse of discretion.

■ Defendant made an offer of proof whose rejection he assigns as error. His trial theory was mistaken identity. He offered to produce a witness who had mistakenly identified him as the man who had held up a nearby market some time after his own arrest for the present robbery. His trial counsel argued that the testimony would have tended to show that a man who looked like him had committed the present robberies.

■ A defendant may prove his innocence by establishing the guilt of another person; the question is "what kind and quality of evidence is essential to that end"; evidence which merely throws suspicion on another person need not be admitted. (*People v. Mendez*, 193 Cal. 39, 52 [223 P. 65]; *People v. Arline*, 13 Cal.App.3d 200, 204 [91 Cal.Rptr. 520].) ■ The offered evidence would have proved no more than an identification error by a witness who did not witness the instant crime. In rejecting the offer of proof the trial court did not abuse the discretion given it by Evidence Code section 352.

■ Defendant contends and the People concede that the judgment should be modified to strike the recital invoking Penal Code section 3024, i.e., that defendant was armed with a deadly weapon. Additional penalties

may not be imposed under sections 3024 and 12022 where the defendant's use of a weapon establishes his guilt of first rather than second degree robbery. (*People* v. *Najera*, 8 Cal.3d 504, 508 [105 Cal.Rptr. 345, 503 P.2d 1353]; *People* v. *Williams*, 2 Cal.3d 894, 910-911 [88 Cal.Rptr. 208, 471 P.2d 1008]; *People* v. *Floyd*, 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862].) We find that a large number of armed robbery appeals are infected with this kind of error. The error often originates with district attorneys who, in drawing informations, fail to observe the admonition of *People* v. *Floyd* and its successors. It is perpetuated by trial judges who mistakenly submit the "armed" issue to the jury. It often escapes the notice of defense counsel, lying dormant until uncovered by the appellate court and its staff. In unappealed cases the error may be undiscovered and result in illegal extensions of imprisonment. Trial judges and district attorneys throughout the Third Appellate District are strongly urged to review their practices in the light of the *Floyd* doctrine, especially as enunciated by the Supreme Court in *People* v. *Najera, supra.*

Defendant also seeks to have the section 12022.5 recital stricken from the judgment. Section 12022.5 prescribes an additional term of imprisonment for a person who "uses a firearm" in the commission of certain crimes, including robbery, "even in those cases where the use of a weapon is an element of the offense." In this case the trial court properly submitted and the jury made a special finding under section 12022.5. (*People* v. *Najera, supra,* 8 Cal.3d at pp. 509-512.) Defendant attacks the finding, claiming the indispensability of evidence of the firearm's operable condition. The revolver, it will be recalled, was not found.

Section 12022.5 is included in a chapter of the Penal Code headed by section 12000, which designates the chapter as The Dangerous Weapons' Control Law. Section 12001 defines the terms pistol, revolver and "firearm capable of being concealed upon the person" as used in that chapter.[1]

Another provision of The Dangerous Weapons' Control Law is section 12021, which prohibits ex-convicts from carrying a pistol, revolver or other firearm capable of being concealed upon the person. In prosecutions under section 12021 the courts have discerned a statutory purpose to prohibit the carrying of "a gun that will shoot and not merely objects that look like

---

[1]The full text of Penal Code section 12001 is as follows: " 'Pistol,' 'revolver,' and 'firearm capable of being concealed upon the person' as used in this chapter shall apply to and include any device, designed to be used as a weapon, from which is expelled a projectile by the force of any explosion, or other form of combustion, and which has a barrel less than 12 inches in length. 'Pistol,' 'revolver,' and 'firearm capable of being concealed upon the person' as used in Sections 12021, 12072, and 12073 include the frame or receiver of any such weapon."

usable guns." (*People* v. *De Falco,* 176 Cal.App.2d 590, 593 [1 Cal.Rptr. 578]; see also, *People* v. *Jackson,* 266 Cal.App.2d 341, 347-349 [72 Cal. Rptr. 162].)

The Dangerous Weapons' Control Law was adopted in 1953. Section 12022.5, which is our present concern, was added years later, in 1969. The draftsmen of section 12022.5 did not expressly exempt it from the definitions in section 12001 or from existing judicial interpretations which posed a demand for "a gun that will shoot." Even so, section 12022.5 is not aimed at the use of a concealable firearm; rather, it applies to any one who uses a firearm irrespective of its concealability. In terms, then, section 12022.5 is outside the ambit of the statutory definitions in section 12001. Thus the courts are free to interpret section 12022.5 to achieve its individual objective without regard to the case law defining firearms for the purpose of the prohibition involving ex-convicts.

In *People* v. *Chambers,* 7 Cal.3d 666, 672-673 [102 Cal.Rptr. 776, 498 P.2d 1024], the Supreme Court discussed the conduct which constitutes use of a firearm within the meaning of section 12022.5. It held that a gun is "used" when it is pointed at the victim to enforce a demand for money. The *Chambers* opinion declares (7 Cal.3d at p. 672): "Although the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies. 'Use' means, among other things, 'to carry out a purpose of action by means of,' to 'make instrumental to an end or process,' and to 'apply to advantage.' (Webster's New Internat. Dict. (3d ed. 1961).) The obvious legislative intent to deter the use of firearms in the commission of the specified felonies requires that 'uses' be broadly construed."

In *People* v. *Washington,* 17 Cal.App.3d 470, 477 [94 Cal.Rptr. 882], another court had observed that "use of a firearm includes within its meaning display with menace during the course of the robbery."

Although decisions such as *Chambers* and *Washington* involve statutory interpretation, the interpretive solution is really a means of establishing the kind and quantum of prosecution evidence necessary to support an inference of guilt and of defense evidence to rebut that inference. ▮ Whether a defendant used a firearm, thus subjecting himself to a finding under section 12022.5, is a question for the trier of fact. (*People* v. *Najera, supra,* 8 Cal.3d at pp. 509, 511; *People* v. *Washington, supra,* 17 Cal.App.3d at p. 477.) The character of the weapon may be shown by circumstantial evidence. (See

*People* v. *Liner,* 168 Cal.App.2d 411, 415 [335 P.2d 964].) From testimonial descriptions of the weapon and its role in the commission of the crime, a jury may draw a reasonable inference of guilt. Reasonableness of the inference depends upon adequacy of the descriptions.

■■■ There is no implication in section 12022.5 which requires the prosecution, as part of its burden of proof, to establish the weapon's operability. The statutory objective, as discerned in *People* v. *Chambers, supra,* rejects that implication. As pointed out in *Chambers,* the statute seeks to deter both physical harm and conduct which produces fear of harm. The fear may arise either from a gun that really shoots or from one which is designed to shoot and gives the appearance of shooting capability. Persons held at gunpoint have no stomach for inquiry. Danger radiates not only from the weapon, but from the defensive reactions of others. In response to the lawbreaker's weapon, operable or not, a victim or law officer may himself resort to a firearm.[2] Further, a demand for affirmative proof of operability would allow the defendant to frustrate the statute by getting rid of the gun or concealing it. In view of the discerned objective of section 12022.5, it is enough that the prosecution produce evidence of a gun designed to shoot and which gives the appearance of shooting capability.

Defendant relies upon the following statement in *People* v. *Torres,* 19 Cal.App.3d 724, 733 [97 Cal.Rptr. 139], in support of his call for affirmative proof of the weapon's operability: "As to Penal Code section 12022.5 (an issue not raised on appeal), we conclude the section is applicable to any person who uses an operable firearm in the commission of a robbery or an attempted robbery. The prosecution need not prove the firearm used was loaded. The revolver used by appellant was introduced into evidence. While it was defective, substantial evidence supports the conclusion it was operable as a firearm."

The quoted statement might be interpreted as a demand for prosecution evidence of the weapon's operable capability. We do not so interpret it. The *Torres* statement does seem to imply that the statutory penalty may be defeated by defense evidence of the weapon's inoperability. There was no evidence of that sort here. The latter implication of the *Torres* case is outside the range of this appeal, and we express neither agreement nor disagreement.

In this case, three victims testified that the robber pointed and threatened them with a weapon which they variously described as a gun, revolver and small caliber revolver; that he ordered them to place money and valuables in a bag and they complied. There was substantial evidence to sustain the

---

[2]The present case supplies an example. One of the robbery victims pursued defendant outside the market and fired two shots at him as he fled up the street.

finding that defendant used a firearm, thus incurring the additional penalty under section 12022.5.

Conforming to the practice approved by the Supreme Court (*People* v. *Najera, supra*, 8 Cal.3d at p. 517), we shall modify and affirm the judgment.

The judgment is modified by striking from each count the recital that defendant was armed with a deadly weapon or a concealed deadly weapon within the meaning of Penal Code sections 969c and 3024 and by adding to each count in lieu thereof the provision: "At the time of the commission of the robbery defendant was armed within the meaning of section 1203 of the Penal Code and that the weapon was a revolver; that defendant used a firearm, to wit, a revolver, in the commission of said robbery within the meaning of section 12022.5 of the Penal Code, but at the time of the commission of the offense sections 3024 and 12022 of the Penal Code were inapplicable." As so modified, the judgment is affirmed.

Regan, J., and Janes, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 4, 1973.